**UNITED STATES of America,**
**Plaintiff,**

v.

**FIRST NATIONAL BANK IN GRAND PRAIRIE, TEXAS, Defendant and Third-Party Plaintiff,**

v.

**G. E. LAWRENCE, as Trustee in Bankruptcy of Commercial Engineering & Manufacturing Company, Inc., Bankrupt, Third-Party Defendant and Third-Party Plaintiff.**

**Civ. A. No. 9332.**

United States District Court
N. D. Texas,
Dallas Division.

March 31, 1965.

Melvin Diggs, U. S. Dist. Atty., Kenneth G. Mighell, Asst. U. S. Atty., Dallas, Tex., Jon Altschuler, Atty., Civil Division, Dept. of Justice, Washington, D. C., for the United States.

Walter A. Cober of Cober, Dougherty & Parum, Thorne & Leach, Grand Prairie, Tex., for First National Bank, Grand Prairie.

Ungerman, Hill, Ungerman & Angrist, Dallas, Tex., Mehl, Williams & Ashley, Ft. Worth, Tex., for G. E. Lawrence, third party defendant.

HUGHES, District Judge.

This is an action by the United States of America (hereinafter "Plaintiff") against the First National Bank in Grand Prairie (hereinafter the "Bank") wherein Plaintiff alleged that the Bank converted or in the alternative refused to pay over to the Plaintiff the sum of $90,702.82 in breach of a Special Bank Account Agreement entered into between the Plaintiff, the Bank and Commercial Engineering and Manufacturing Co. (hereinafter "CEMCO"), a corporation now in bankruptcy.

Subsequent to the filing of the Complaint G. E. Lawrence, as Trustee in Bankrupcty of CEMCO (hereinafter "Trustee") was joined as a third party defendant. On March 19, 1964 the Court denied the Trustee's motion to dismiss the action holding that this Court had jurisdiction over the subject matter of this case. The Trustee made a motion to add Ellis Campbell, District Director of Internal Revenue (hereinafter "District Director") as a third party defendant.

The Court ordered a separate trial of the claim of Plaintiff against the Bank. On May 21, 1964 and after a trial before the Court and a jury and presentation of all the testimony and evidence, the Court entered a Judgment awarding Plaintiff $69,318.82, plus interest and court costs, and dismissed the Bank's counterclaim.

The Trustee then filed cross claims against Plaintiff for $107,799.23 and against the District Director for $21,-384.00.

The cross claim against Plaintiff was computed as follows: (1) $38,480.41, the sum withdrawn from the Special Bank Account by the proper Government agent pursuant to the alleged authority vested in him as provided in the Advance Payments Pool Agreement and the Special Bank Account Agreement; (2) $69,318.-82, the sum awarded to Plaintiff by the Court on May 21, 1964. The claim against the District Director was for amounts levied upon and foreclosed by the District Director.

The Trustee filed a motion for Summary Judgment against Plaintiff for $107,799.23 on the grounds (1) that this Court had jurisdiction to hear the claim against Plaintiff pursuant to 11 U.S.C. § 46; and (2) that under 11 U.S.C. § 107, sub. c (1) the aforementioned sum properly belongs to the Bankruptcy Court. He also filed a motion for Summary Judgment for the amounts that he alleged were improperly foreclosed by the District Director. (The Court ordered that the third party complaint against the

District Director be dismissed and that the Trustee be permitted to substitute the Plaintiff in place of the District Director.)

Plaintiff filed a motion to dismiss or in the alternative for Summary Judgment dismissing the Trustee's cross claim on the grounds that as to the claim for $107,799.23 (1) this Court had no jurisdiction since the claim was in excess of $10,000; (2) foreclosure of the Government's paramount lien on the proceeds of the Special Bank Account is valid and immune from attack by virtue of 11 U.S.C. § 107, sub. c. In addition it filed a motion for Summary Judgment dismissing the Trustee's claim to the amounts foreclosed by the Internal Revenue Service.

After examining the pleadings, the Stipulation of Facts entered into between the parties, all other evidence that appears in the record, the cross-motions for Summary Judgment and motion to dismiss, the Court makes the following findings:

### Findings of Fact

1. On May 12, 1959, the Plaintiff, through its instrumentality the Air Force, entered into fixed-price contract AF 41(608)10677 (hereinafter "No. 677") for the purchase of 262 Bomb Trailers and 262 Adaptor Bolsters at the contract price of $2,824,888.07. A supplemental agreement, dated June 4, 1961 was entered into providing for delivery of spare parts for the Bomb Trailers and Adaptor Bolsters which brought the total contract price to $3,253,498.25.

2. On December 28, 1960 letter contract AF 41(608)12953 (hereinafter "No. 953") was issued for 80 additional Bomb Trailers and Adaptor Bolsters with CEMCO. On April 14, 1961, Change Order #3 was issued increasing the number of Trailers and Bolsters by 117, making a total of 197 to be delivered with a ceiling price of $11,500.00 per unit. The contract was definitized on May 23, 1961 for a total contract price of $3,329,755.26.

3. On July 27, 1961, the Plaintiff entered into an Advance Payments Agree-

ment with CEMCO providing for the making of advance payments to the contractor on Contract No. 953 in the sum of $700,000.00. (Supplemental Agreement No. 1). Subsequently, on October 9, 1961, an Advance Payments Pool Agreement was entered into between the same parties. (Supplemental Agreement No. 5 to Contract No. 677 and Supplemental Agreement No. 40 to Contract No. 953 increased the authorized amount of advance payments for both contracts to $950,000.00 of which $825,000.00 was actually advanced.)

4. The Advance Payments Agreements were authorized by Armed Services Procurement Regulations (hereinafter "ASPR") 4–400 et seq. (Appendix E) as implemented by Air Force Procurement Instructions 58–708 et seq.

As required by ASPR Appendix E–413 the Advance Payments Agreements (Section 2) provided for deposits of all advance payments into a Special Bank Account.

Section 2 of the Advance Payments Pool Agreement stated that

Special Bank Account: Until all advance payments made hereunder, and interest charges, are liquidated and the Administering Office approves in writing the release of any funds due and payable to the Contractor, all advance payments and all other payments under the contracts shall be made by check payable to the Contractor and be marked for deposit only in a Special Bank Account with the bank designated in Paragraph (14) (b) below. No part of the funds in the Special Bank Account shall be mingled with other funds of the Contractor prior to withdrawal thereof from the Special Bank Account as hereinafter provided. Except as hereinafter provided, each withdrawal shall be made only by check of the Contractor countersigned on behalf of the Government by the contracting officer or such other person or persons as he may designate in writing (hereinafter called the Counter-signing Agent).

Section 11 stated:

Default Provisions. Upon the happening of any of the following events of default * * * (ii) a finding by the Administering Office that the Contractor * * * (b) has so failed to make progress, or is in such unsatisfactory financial condition as to endanger performance of the contracts, * * * the Government, without limiting any rights which it may otherwise have, may, in its discretion and upon written notice to the Contractor, withhold further withdrawals from the Special Bank Account and withhold further payments on the contracts. Upon the continuance of any such events of default for a period of thirty (30) days after such written notice to the Contractor, the Government may, in its discretion, and without limiting any other rights which the Government may have, take the following additional actions as it may deem appropriate in the circumstances; (a) withdraw all or any part of the balance in the Special Bank Account by checks payable to the Treasurer of the United States signed solely by the Countersigning Agent and apply such amounts in reduction of advance payments then outstanding hereunder and in reduction of any other claims of the Government against the Contractor. * * *

5. The Government, CEMCO and the Bank on July 27, 1961 and October 9, 1961 entered into "Agreements for Special Bank Account" designated as "Commercial Engineering and Manufacturing Company, Department of the Air Force, Special Bank Account."

The Agreements for Special Bank Account recited:

(1) The Government shall have a lien upon the credit balance in said account to secure the repayment of all advance payments made to the Contractor, which lien shall be superior to any lien or claim of the Bank with respect to such account.

(2) The Bank will be bound by the provisions of said contract or contracts relating to the deposit and withdrawal of funds in the above Special Bank Account, but shall not be responsible for the application of funds withdrawn from said account. After receipt by the Bank of written directions from the Contracting Officer, or from the Administering Office designated in the advance payment contract mentioned above, or from the duly authorized representative of the Contracting Officer or the Administering Office, the Bank shall act thereon and shall be under no liability to any party hereto for any action taken in accordance with the said written directions. Any written directions received by the Bank through the Contracting Officer upon Department of the Air Force stationery and purporting to be signed by, or by the direction of *the Administrative Contracting Officer* or his duly authorized representative, shall, in so far as the rights, duties and liabilities of the Bank are concerned, be conclusively deemed to have been properly issued and filed with the Bank by the Department of the Air Force.

6. On or about July 27, 1961, September 19, 1961, and October 11, 1961 advance payments of $500,000.00, $200,-000.00 and $125,000.00 respectively were deposited in the Special Bank Account. None of the advances had been repaid by the bankrupt by February 28, 1962.

7. By letter dated September 15, 1961, and prior to the date that advances were made under Contract No. 677, the Bank waived any rights it had under an assignment of monies due under Contract No. 677. There was no assignment of the proceeds of Contract No. 953.

8. On February 13, 1962, CEMCO, in a letter to the Dallas Air Force Contract Management District, advised the Air Force that it had ceased all work on both contracts. On that date, the Air Force pursuant to paragraph 11(ii) (b) of the Advance Payment Pool Agreement, noti-

fied CEMCO that further withdrawals from the Special Bank Account were to be withheld.

9. On December 8, 1961, a delegate of the Secretary of the Treasury of the United States made an assessment against CEMCO for a depository receipt penalty in the total amount of $326.99. This assessment included interest in the total amount of $5.00. Notice of this assessment was given to said taxpayer and demand for payment was made on December 8, 1961. A Notice of Lien relating to this assessment was filed in Tarrant County, Texas, on February 20, 1962.

10. On February 16, 1962, a delegate of the Secretary of the Treasury of the United States made an assessment against CEMCO of withholding taxes for the 4th quarter of 1961 in the total amount of $20,454.07. This assessment included interest in the amount of $19.40. Notice of this assessment was given to said taxpayer and demand for payment was made on February 16, 1962. A Notice of Lien relating to this assessment was filed in Tarrant County, Texas, on February 20, 1962.

11. On February 16, 1962, a delegate of the Secretary of the Treasury of the United States made an assessment against CEMCO of withholding taxes for the 1st quarter of 1962 in the total amount of $11,961.04. This assessment included interest in the amount of $81.83. Notice of this assessment was given to said taxpayer and demand for payment was made on February 16, 1962. A Notice of Lien relating to this assessment was filed in Tarrant County, Texas, on February 20, 1962.

12. On February 23, 1962, a delegate of the Secretary of the Treasury of the United States made an assessment against the taxpayer, CEMCO, of Federal Unemployment Tax Act taxes for the year 1961 in the total amount of $1,698.56. Notice of this assessment was given to said taxpayer on February 23, 1962.

13. On or about February 16, 1962, a payment in the amount of $13,056.66 was made by CEMCO to the Internal Revenue Service to be applied on the December 8, 1961 and the February 16, 1962 tax assessments.

14. On February 21, 1962 and February 27, 1962, a delegate of the Secretary of the Treasury of the United States served Notices of Levy on the Bank. These Notices of Levy covered the balance of the tax liabilities.

15. On or about March 9, 1962, the Bank offset the amount of $19,685.44 against the account designated as "Commercial Engineering and Manufacturing Company, Department of the Air Force Special Bank Account," and paid said sum to the District Director of Internal Revenue, Dallas, Texas, on or about that date in response to the Notices of Levy referred to in Paragraph 14 above to be applied on the February 16, 1962 tax assessments.

16. On or about March 9, 1962, the Bank offset the sum of $1,698.56 against the account designated as "Commercial Engineering and Manufacturing Company, Department of the Air Force Special Bank Account," and paid said sum to the District Director of Internal Revenue, Dallas, Texas, on or about that date, in response to the Notices of Levy referred to in Paragraph 14 above to be applied on the February 23, 1962 tax assessment.

17. The Air Force by notice dated February 27, 1962 properly terminated Contract No. 677. On February 20, 1962, the Air Force by notice properly terminated Contract No. 953.

18. At the time the contracts were terminated there remained in the Special Bank Account $129,183.23.

19. Subsequent to February 12, 1962, the Bank offset $90,702.82 from the Special Bank Account in violation of the terms of the Special Bank Account Agreement.

20. On or about March 22, 1962, F. T. J. McEachern, Air Force Contracting Officer on both contracts, made demand on the Bank for the sum of $129,183.23 out of the Special Bank Account by pres-

entation of a check in said amount payable to the Treasurer of the United States.

21. On or about March 22, 1962, the Bank informed Mr. McEachern that there were not sufficient funds in the bank account titled "Commercial Engineering and Manufacturing Company, Department of the Air Force Special Bank Account," to honor said check in the amount of $129,183.23.

22. On or about March 22, 1962, Mr. McEachern presented a check in the sum of $38,480.41, drawn on the bank account titled "Commercial Engineering and Manufacturing Company, Department of the Air Force Special Bank Account," and made payable to the Treasurer of the United States.

23. Said check was honored on or about March 22, 1962.

24. On February 28, 1962, an involuntary petition in bankruptcy was filed against CEMCO. The corporation was adjudicated bankrupt on March 23, 1962, and G. E. Lawrence was appointed Trustee.

25. On May 21, 1962, a Judgment Order was entered in this Court against the Bank awarding Plaintiff $69,318.82, with interest at the rate of 6% per annum from the 22nd day of March 1962, and court costs. This Court held that:

"The terms of the Advance Payment Agreement and Special Bank Agreement are binding on the Bank and no oral agreement can alter, modify or vary the terms of the written instruments with reference to the withdrawal of funds from the Special Bank Account or relieve the Bank from its obligation to only withdraw funds when a check signed by the Contractor and an authorized representative of the Government is presented."

## CONCLUSIONS OF LAW

1. The Pre-Trial Order of May 21, 1964 filed herein was not dispositive of the jurisdictional question raised by Plaintiff as to the Trustee's right to maintain its cross-action before this Court, however, this Court has jurisdiction under 11 U.S.C. § 46 and 11 U.S.C. § 107, sub. c to enter a declaratory judgment determining whether this Court or the Bankruptcy Court has jurisdiction over the fund which is the subject matter of this suit and, therefore, Plaintiff's motion to dismiss is denied.

2. The Plaintiff had a paramount lien on the funds the Trustee is seeking, which total $129,183.23, by virtue of the lien created by the terms of the Advance Payments Pool Agreement and the Special Bank Account Agreements and is thus entitled to retain that amount.

3. Since the Plaintiff's lien on the funds that were placed in the Special Bank Account is contractual in nature and not statutory 11 U.S.C. § 107(c) (1), which refers to statutory liens, is inapplicable by its terms and in no way affects the rights of Plaintiff to retain the sum of $129,183.23. In re New Haven Clock & Watch Co., 253 F.2d 577, 582 (C.A. 2 1958); In re Tele-Tone Radio Corp., 133 F.Supp. 739, 748 (D.C. N.J. 1959); 4 Collier Bankruptcy (14th Ed.) 184, 291.

4. The Internal Revenue Service had a valid lien upon the funds in the Special Bank Account and this lien was effectively foreclosed on February 21, 1962 and February 27, 1962 by the service of Notices of Levy upon the defendant bank and that upon such foreclosure possession and right to such fund was vested in the Internal Revenue Service and the Trustee therefore has no claim or right to such fund.

5. The Motion for Summary Judgment made by plaintiff and the Motion to Dismiss made by the Third-Party Defendant, Ellis Campbell, Jr., District Director of Internal Revenue, are hereby granted and all claims made by Third-Party Defendant, G. E. Lawrence, Trustee, against said plaintiff and Third-Party Defendant, Ellis Campbell, Jr., are hereby denied.